We are hearing one argument this morning in United States of America v. Eric Seigman, consolidated cases 17-3368 and 19-3203. I want to thank counsel for appearing by telephone. Obviously this is not the optimal way to conduct oral argument, but we're balancing the parties need for timely justice with the challenges inherent in the pandemic. But we thank counsel for appearing and we probably will be liberal with the clock here since this is our only argument this morning. Before I ask Mr. Seigman to make his presentation, I just want to mention to counsel that we scheduled oral argument in this case because of the Supreme Court's decision in United States v. Haymond where the court declared subsection K, 3583K of Title 18 of the United States Code unconstitutional under the Fifth and Sixth Amendments. Obviously this case presents a different subsection of 3583, namely G. And we have to figure out what to make of the plurality decision in Haymond. And what I think everyone will agree is Justice Breyer's controlling concurrence in the judgment in Haymond consistent with the Marks Vote Counting Rule. So with those preliminaries out of the way, I'll turn it over to you, Mr. Seigman. Welcome. Thank you very much. It's always an honor to appear before the court no matter the format. May I please reserve three minutes of my time for rebuttal? Absolutely. Thank you. Under Justice Breyer's controlling concurrence in Haymond, mandatory revocation under 3583G violates the jury right because it shares the same three disqualifying features of 3583K that make it more like punishment for the defendant's particular conduct and not for his breach of trust. So first, 3583G is triggered by discrete conduct identified in the statute. Drug or gun possession, three positive drug tests, or a refused drug test. Subsection K also is triggered by discrete conduct identified in the statute. Second, 3583G removes the judge's discretion to decide whether to revoke release and how long a sentence to impose, just like 3583K. And finally, 3583G limits the judge's discretion in a particular manner by imposing a mandatory minimum prison sentence, just like 3583K. And as a result of these three factors, by linking a mandatory minimum prison sentence to particular kinds of violations, 3583G departs from the traditional model of revocation where you're punishing the defendant's breach of trust, his violation of court-imposed conditions, and instead is more punishing the conduct itself. And that makes it a violation of the jury right. So counsel, just an interjection. Would that mean that any sentence that's imposed as part of a revocation under 3583G would be unconstitutional under the Fifth and Sixth Amendments? Yeah, and I think there's two ways to think about it. You know, we advocate for the broad view that 3583G is unconstitutional because it links a mandatory minimum prison sentence to particular forms of conduct. But there is a narrower option available to the court because if you look carefully at 3583G, it's subdivided into four subsections, Gs 1 through 4. And this case actually only concerns subsection G1 because Mr. Siegman's violation was drug possession. So you could write a narrower decision just invalidating G1 as applied to illegal drug possession. But it's your position that the whole statute or, you know, a whole, maybe not the whole statute, but all of G1 would have to go. This isn't something that's necessarily dependent on the cumulative total of the revocations versus statutory maximums for the underlying crime or anything like that. This is just a straight up almost, you know, facial challenge to either 3583G or 3583G1. Yeah, and that was sort of the rationale of Justice Breyer's decision, striking down subsection K. It didn't have anything to do with, you know, the statutory maximum for the initial offense. That was more the reasoning of the plurality. That also happens to be a problem in this case, but it's a different form of challenge. Kind of funny, just observationally, it's kind of funny that Justice Breyer's, you know, narrow ground, I think everyone agrees we have to follow, actually kind of feels a little more broad in the sense of it's a facial invalidation as opposed to any sort of as applied or the context of a given sentence sort of invalidation. It's a little strange that the narrowest ground also be a facial attack. In some ways, I mean, I think that Justice Gorsuch's plurality is also kind of a facial invalidation of subsection K. He just does it through Apprendi, and Justice Breyer does it through this three-factor test. In some ways, I think Justice Gorsuch's reasoning is broader because I think applying Apprendi to supervised release may have broader implications, whereas applying Justice Breyer's three-factor test would only invalidate subsections G and subsections K. And the reason I mentioned subsection G1 is one of the arguments the government's made in defense of subsection G is that, well, it doesn't target crimes, and subsection K does target crimes. Now, in my view, that's a distinction without a material difference because the real issue here is whether you're punishing particular types of conduct, not particular crimes. But to the extent the court finds that argument persuasive, subsection G1 solely targets drug possession, which is a federal crime under 21 U.S.C. 844. So even according to the government's argument on that point, G1 would still be unconstitutional. If the court has any more questions about this, I'm happy to answer, or I can move on to the plain error issue. I'd like to ask about prong one of Justice Breyer's three-part test. Can you give us an example of, and I guess it's a definitional problem or challenge that we have here. Can you give us an example of something that would not be discrete punishment? You mean would not be a punishment linked to discrete conduct? Yes. So I think subsection E3 does that, and E3 is perfectly compliant with the jury right. It says that if the defendant violates a condition, the judge may revoke supervised release. So it's not linked to particular conduct, and that's okay. What Justice Breyer says is that, you know, the whole concept of revocation is that you're punishing the defendant's failure to follow the conditions, not the particular conduct underlying that failure. And that's sort of the basis for the whole constitutional basis for revocation of release. And subsections K and G depart from that basis because they're targeting specific conduct. So when you sort of give the judge discretion to look at the whole of the defendant's behavior and make a decision about whether it warrants revocation, that's perfectly acceptable. But when you target specific conduct and require the judge to imprison the defendant as a result, then you've crossed the line and violated the jury right. But here, when Justice Breyer refers to a discrete set of criminal offenses specified in the statute, when we look at G, it just seems a lot fuzzier than that. I mean, some of these are not even crimes, right? Well, under G-1, which only refers to drug possession, that is a crime. You know, G-3 and G-4 are not crimes. Again, I don't think... I mean, are we sure G-1's a crime? I mean, isn't it true that possessing a controlled substance of marijuana in some states is not a crime? Not a crime under state law, but still a crime under federal law. And G-3, I mean, refusing to comply with drug testing, that's not a crime, right? Right. So what I would say is first, I don't think it has to be a crime. What Justice Breyer says in his concurrence in the paragraph just before he lists the three factors is that the traditional revocation is a punishment for the breach of trust, not the particular conduct triggering the violation. He doesn't say crime. He says conduct, and that's the key here. You know, he says when he lists the three factors that K targets a discrete set of federal criminal offenses because that's what K was targeting. But I don't think there's any indication, if you look at the principle animating his decision, that it would have come out differently if K targeted conduct rather than offenses. But, you know, to the extent you find that a meaningful distinction, I'd urge you to just, you know, limit your decision to G-1, which is a crime. I was just going to move on to the second prong, but Judge Phipps, do you have a question on the follow-up on the first prong? Yeah. Yeah, I mean, I kind of do here is, look, I get, I mean, we can't just treat subsection K and subsection G-1 as having identical or mirrored structure. I mean, subsection K lists individual, you know, statutory violations, and then G-1 links the violation to a condition of supervised release in subsection D. And so to the extent that there's a distinction here between your classic breach of trust versus kind of a freestanding crime, subsection D is all about conditions of supervised release. And so doesn't those conditions of supervised release steer us closer into that kind of classic breach of trust scenario as opposed to articulating freestanding crimes like K does? What do you say? Yeah, I have two responses to that. You're right that G-1 cross-references subsection D, but then if you look at the provision of the part of subsection D it's talking about, it says that the court shall order as an explicit condition of supervised release that the defendant refrain from any unlawful use of a controlled substance. So it's just sort of cross-referencing another provision that requires a condition of supervised release prohibiting the defendant from committing a crime. You know, but I mean, there does seem to be that intervening step though, right? One is K says if you violate a statute, that's no intervening step. What we have with G-1 is okay, if you violate something on D and then D says it's not the statute itself, but the court will then order that you can't violate the statute. And so it's that intervening step. I mean, does that intervening step, I mean, it sounds to me like maybe you say that intervening step is immaterial because we get to the same endpoint regardless. But if we're going to get to the same endpoint regardless, then the distinction between breach of trust and violation of a statute seems to be obliterated to me. I mean, I think that sort of elevates form over substance here. I don't think if subsection K rather than cross-referencing other criminal statutes just described the criminal conduct, the sexual offenses that would trigger the five-year mandatory minimum, I don't think Justice Breyer would have said, oh, that's fine. You know, it's describing sexual abuse. It's not linking to a criminal statute that describes sexual abuse. So that doesn't violate the jury, right? Well, talk about the intervening step though. So let's say, yeah, that is form over substance. Talk about the intervening step. What if subsection K said, and then a court will, as a condition of supervised release, you know, I mean, maybe it does. Maybe that's your point, is look, the same intervening step exists for G and K. Just K does it in one-stop shopping, and G1 says you have to go through D, and then D says the court has to specifically impose it. Right. I mean, if K said it's a five-year mandatory minimum if you violate your supervised release by committing a sex offense, that wouldn't solve the problem. You really got to look at the substance of what these statutes are doing, which is that they're targeting particular conduct and requiring a prison sentence as a result. And you're right. They sort of take different formal routes to going there in terms of the statutes they cross-reference, but K says if you commit this set of crimes, you get a five-year mandatory minimum, and G says if you, you know, commit unlawful possession or use of a controlled substance, then you get a mandatory prison sentence. And I think in substance, those are the same things. And what the lesson of our jury right jurisprudence is that effect and substance are really the key here. We don't want the government to evade the jury right through formal tricks. I see my time's up. I'm happy to answer any more questions or save the rest for rebuttal. Let's move on to the second prong where Justice Breyer said subsection K takes away the judge's discretion to decide whether violation of a condition of supervised release should result in imprisonment. You've got that component here. But then he also says and for how long. Isn't it the case that the Supreme Court expressed concern about the fact that K required a five-year minimum and that that concern was particularly salient because in that case, the district judge, the sentencing judge, put on the record that a sentence of allowed two years was appropriate in that judge's view. So the judge was explicit on the record that his or her, I forget if the judge was a man or a woman, but the judge expressed some consternation that his or her hands were tied. Isn't that true? Yeah, that is true. I mean, I think that might tie into the substantial rights piece of the case, the judge's comments at the sentencing hearing. But in terms of the length of the mandatory minimum, you know, it's true K was a five-year mandatory minimum. Here we have sort of a one-day mandatory minimum. But there's nothing in Justice Breyer's opinion that suggests that the length is the determining feature. He never actually says that K is too punitive or suggests that K would have been okay if it was just a four-year mandatory minimum or a three-year or a two-year. You know, he says that it's a five-year mandatory minimum, and it was in that case. But really, what seems to be the key to him is linking mandatory imprisonment to particular conduct. And we do have that here. I do think there's some overlap between factors two and three, and the plurality actually points that out in footnote nine of the plurality opinion, that there's some overlap there. But ultimately, I think that the key is that you're removing the judge's discretion to decide whether to imprison the defendant, and the length is not a determining factor. Well, but if the judge only needs to impose one day, doesn't that give the judge the latitude he or she needs to determine the gravity of the breach of trust? Isn't that what supervised release is all about? And you do have the classes of violations that do limit, to some extent, a judge's discretion, whether it's class A, B, C violation. But it just seems that this statute, even subsection one, gives the trial judges the to do substantial justice and determine exactly what the gravity of the breach of trust is. Well, you know, the judge has more discretion under subsection G than under subsection K. But, you know, I think the key is that they don't have discretion to let the person stay out if they possess drugs. And, you know, the government says, well, this is just a de minimis mandatory minimum. But even one day in prison can really interfere with someone's life. They could lose their job, their kids are left alone, their home is left alone. It can be a really traumatic experience. And, you know, removing the judge's discretion to decide whether to do that to somebody, based on particular conduct, it just becomes punishment for the conduct and doesn't let the judge sort of take into account the whole of the defendant's behavior and compliance with the court-ordered conditions. All right. Why don't you finish up, if you would, to what you averted to earlier, naming that no objection was made here. So you have to satisfy the stringent plain error test. Right. So there's, you know, there's three more factors under the plain error test. If the court finds this is error, it also has to find that it's clear or obvious error. There is no direct precedent on point. But that hasn't stopped this court from finding clear or obvious error in the past. And I direct the court to the response to the government's 28-J letter that we submitted two days ago, where we list multiple cases where this court found clear or obvious error, even where no Article III court had ever addressed the precise question, but where the precedent is clear in its implications, where it applies by analogy, then error may be clear or obvious. And I would say that because Justice Breyer's reasoning in regards to K tracks so neatly on to G, I do think it's clear or obvious error here. We also have to show an effect on substantial rights. And I think we have shown that because mandatory revocation sends a strong message to the district court. And the government actually concedes that in its brief. It says at page 26 that subsection G, this is a quote, makes clear to courts that Congress considers drug usage and firearm possession to be particularly serious violations indicative of lack of adjustment to the community. The Supreme Court observed in Alleyne that mandatory minimums are commonly associated with aggravated offenses, and they're meant to heighten the consequences for that behavior. So when the court is sentencing Mr. Siegman, it knows that Congress thinks drug possession is one of the most serious ways you can violate your supervised release. It requires a prison sentence. And so that may have led the judge in assessing all the circumstances to impose a longer sentence. That sounds like the opposite of the reasonable inference here. Because if Judge Bassoon had thought that leniency was required for Mr. Siegman, she would have given him a day in jail and perhaps done so reluctantly, right? She gave him another 24 months, if I remember correctly. Is that right? That's right. Yeah. So doesn't that two-year sentence send a strong message that she was exercising her discretion to be relatively harsh toward Mr. Siegman for what really was a repeated breach of trust and perhaps even some real disappointment in the fact that not only was he using heroin, but if I recall the facts correctly, he was doing it in a step-down or rehab context that was going to hurt a lot of other people, too. He was in a reentry center. Yeah, I mean, I think that, you know, I think she would have revoked his release even without Subsection G. But the key is that when she was deciding what the sentence should be, she had in her head that, well, this is one of the most serious violations you can commit, and I know that because Congress requires revocation in these circumstances. So perhaps if she was proceeding under Subsection E3, she would have only given him 18 months or 20 months. But instead, she knew, and the prosecutor actually made it a point to say, and this is at page 98-99 of the appendix, that revocation was mandatory. And the court referred to that at 104, where the judge said that supervised release must and should be revoked. So I think that sort of led to a longer sentence because the judge was applying the mandatory revocation provision. I mean, you know, that's quite an inference, right? I mean, she could have given the same sentence if Congress didn't express mandatory revocation, right? Yeah, if she could have, then, I mean, it's hard to make a substantial rights play or not. I'm not sure that's right. I mean, so in Payano, this court explained the standard for finding plain error on a statutory range error case. And, you know, we don't have to show that it's more likely than not she would have imposed the lower sentence. All we have to show is that the error was significant enough to undermine your confidence in the outcome. And in the Curry case, which we said in our brief from the Seventh Circuit, I believe, in that case, the court applied the wrong mandatory minimum, but said that the sentence was reasonable under the circumstances. And it would have been a lawful sentence even without the mandatory minimum. The Seventh Circuit still found plain error and an effect on the defendant's substantial rights because it said the mandatory minimum is necessarily one of the circumstances that the judge has to consider. And in fact, in Payano, this court said that an error as to the mandatory minimum is arguably far more prejudicial than an error as to the statutory maximum. So I think that, you know, the bar is a little bit lower in this case. I will say, you know, this is not a case where we can point to something the court said that, you know, definitively shows that the error affected the outcome. But that's not the standard. And, you know, the other thing is that the sentencing transcript is remarkably thin on the judge's explanation. It's less than a page of explanation as to why a two-year sentence was merited. So I think to the extent that there are references to mandatory revocation, those sort of loom larger in the court's analysis. Ultimately, I think the best thing – oh, go ahead. I was just going to say that the best thing is if you find clear, obvious error, I think this is a situation where, you know, it's best to get the district court another shot at it, you know, because mandatory revocation sends such a strong message that we should give the court the chance to apply the correct provision and decide on appropriate sentence. So let me just give a pretty extreme hypothetical here, because it sounds like you're arguing based on principle, not necessarily the facts of this case. But let's just say that the range is one day to 360 months. One day to 360 months. And the district judge then decides, well, mandatory minimum is one day. Max is 360 months. I'm going with 360 months. So, you know, I mean, are we supposed to say the presence of that one-day mandatory minimum invalidates – you know, affects substantial rights such that absent that one-day mandatory minimum, we wouldn't have substantial – or because of that one-day mandatory minimum, we don't have confidence that the 360-month sentence was, you know, was properly arrived at? It's a more extreme example. But I'm trying to tease out, since you're arguing from principle, which I commend you for talking about it. So I think that sounds more like a presumption of prejudice, that just because the judge was wrong about the mandatory minimum, it affected substantial rights. And Peano rejects a presumption of prejudice for statutory range errors. So you'd really just have to look at the record in that case. And, you know, if the judge referenced the mandatory minimum of one day in imposing the sentence as a factor or as a consideration, then I would say that that established actual prejudice. And we do have that here. Again, the sentencing explanation is short. But the prosecutor specifically invoked mandatory revocation. The court said that release must be revoked. And it twice said that it was considering all the factors and all the circumstances presented here. And, of course, that includes the mandatory minimum. So, you know, in your hypothetical, it would depend on the record and the court sentencing explanation. And when you look at it in this case, I think it does show actual prejudice. Okay. Judge Nygaard, do you have any questions at this time for Mr. Schuman? I have none, Judge Hartman. Thank you. Okay. All right. Thank you, Mr. Schuman. We'll hear you on rebuttal. Thank you. Mr. Hallowell. Good morning, Your Honors, and may it please the Court. Adam Hallowell for the United States. The District Court did not plainly err at Mr. Sigmund's 2019 revocation hearing in revoking his supervised release under Section 3583G. Mandatory revocation under Subsection G complies with the jury trial right because it is more like ordinary revocation than punishment for a new offense, as is shown by Justice Breyer's three-factor test. And any error here was not plain and did not affect Mr. Sigmund's substantial rights or the fairness and integrity of the hearing, in large part because the District Court stated that it would have revoked Mr. Sigmund's release even if that were not mandatory. For those reasons and others, this Court should affirm Mr. Sigmund's 2019 revocation and should revoke his 2017 revocation as moot. I'd like to start by going to the merits of the Heyman question and Justice Breyer's controlling opinion. And the three-factor test that he lays out is premised on the question of whether the provision at issue is less like ordinary revocation and more like punishment for a new offense, as he found K to be. Well, Mr. Heyman says it's punishment for a new offense because when you look at the statute, you see criminal offenses there, particularly in Subsection 1. Isn't Subsection 1 a criminal offense? Subsection 1 is a criminal offense in the sense that the condition is that the defendant have unlawfully possessed a controlled substance. That's the terminology used in D. I would point out there's not a requirement under 3583 for it to be unlawful under federal law as opposed to state law. If the defendant were to possess a substance that were not mentioned in the federal code but were mentioned in state code, it would still be a violation of 3583G. So that's one distinction from K that could be significant that Congress is reaching out beyond enumerated federal crimes. And certainly, it's a much broader brush provision than K, which names the specific provisions of the federal code. And of course, in other provisions of G3 and G4, those are directed at drug testing and the defendant's failing or failing to comply with drug testing. And those are things that are not standalone federal crimes. Do we have to look at G as a unified whole? Or can we segregate out Subsection 1, which is the one that's factually apt in this case? I mean, certainly, G1 is the only paragraph that is applicable here. And the court could look at this on its own. I think it's helpful to look at the other provisions of G, which Congress has determined in the entire scheme of 3583G, or of 3583 as a whole, should have the same sanction here. But I think regardless of whether you look at G as a whole or G1, it's still clear that this is punishment for a breach of trust and a breach of the conditions of conditional release that are permissible and that Congress set forth for supervised release. But how do we know that? I'm really struggling to know what the markers are or the guideposts are for us to distinguish between what Justice Breyer called ordinary revocation and what he called punishment for a new offense. What do we look at to discern what side of that line each case falls on? I think it's a difficult question, for sure, but I think it's important to look at the purposes of supervised release. And that's why it's helpful to look at 3583 as a whole. What is this concept of conditional release, which Congress in 1984 intended to be a substitution for, similar to traditional parole? Why would a court impose that and what is Congress seeking to achieve from that? I think it's important to point out drug possession, the prohibition on drug possession is a mandatory condition of supervised release under D. A court must impose that, just like a court must impose drug testing unless it finds a very low risk that the defendant will abuse substances. So these are signals that drugs are a broad category of behavior that Congress wanted people recently released from prison to be separated from, to stay away from, for all the general reasons that supervised release is imposed, to deter renewed criminal conduct by recent releasees, to protect the public from that conduct, and for rehabilitative purposes. Does that mean that drug offenses are broad because there are so many drugs and so many different ways to violate drug laws, but yet child pornography laws are discreet? Is that the difference? I wouldn't phrase it that way. I do think it's important that Congress is, again, using a broad descriptor here of types of conduct rather than trying to, so to speak, pile on to a specific federal crime. I think it's also notable, and I think what may have been in Congress's mind here, is drugs can lead to a very wide range of criminal conduct. More than simply selling or using drugs, drugs can be a motivator for violent conduct in terms of the drug trafficking efforts. Drug addiction can drive people to commit a wide range of financial crimes. This case is a perfect example of that. It started out as a conspiracy to test counterfeit currency, and in Mr. Sigmund's pre-sentence report, you see many different types of crimes, retail theft, DUI, all of which appear to be linked to his drug addiction and his usage of illegal drugs. I think it would be a reasonable judgment, and it was a reasonable judgment, for Congress to say, we want drugs to be something that criminal defendants who are unsupervised for release most clearly should stay away from. Again, Mr. All right, let me try to give you a following up on my colleague, Judge Fitz. Let me give you a hypothetical that is a little bit fantastic but might be analytically helpful. What if G1, instead of just saying possessors of a controlled substance, what if G1 said possessors with intent to deliver five kilograms or more of substance containing cocaine? Discreet or general? That would sound discreet. I mean, and again, I think one key there is that what you've described is a much more specific federal crime. So again, maybe the issue here is not citing a particular section of the U.S. Code of Title 18, as Kay did, but whether you are describing- Well, I mean, in fairness, I mean, Kay did way more than just cite a particular section. It says chapter, 109A, 110, 111, if I'm reading the right section. And then there's other parts that are specific to sections. But I mean, you know, when you're going to use phrases like chapters, that makes whatever discreet means feel kind of, you know, kind of broad. That's correct. That's correct. I mean, certainly the chapters that are listed there are connected with a relatively discreet set of subsections or sections. But let me follow up on Judge Hariman's question here, hypothetical about G1. I mean, one of the things that is different, at least as I read it, and there's many words in these things, so in these statutes, so maybe I'm missing something. But G1 says, possess a controlled substance in violation of the condition set forth in subsection D. And so I asked your opposing counsel about what is the role of this word, the condition? Because it doesn't just straight up list chapters or offenses. It lists those chapters as offenses through this reference to the condition. And if it is a condition on supervised release, doesn't that move us into the breach of trust category as opposed to just the delimited offenses category? So I guess the hypothetical would be what if – your case would be much more like subsection K if the phrase of the condition set forth in wasn't there but just straight up said, the defendant shall not commit another federal, state, or local drug crime. But it says a condition. Am I reading too much into that in this scenario, or does that text have any meaning to you? I think it is certainly helpful in showing that for G1, Congress is very explicit. We are doing this as an add-on to the mandatory condition that is in B. G1 is the clearest paragraph there that says this is directed at your breach of a particular condition. And I think that very clearly takes us out of Breyer's Factor 1. It's not aimed at an offense. It's aimed at this particular condition. I think even if you didn't have the word condition in that paragraph, as of course you don't in the other three paragraphs of G, it's still – Congress still knows that a couple of subsections earlier in B, there is this condition of mandatory drug testing. Congress clearly is thinking about that parallel between G and the mandatory condition in B. So – and G2 also refers to violate the condition of supervised release prohibiting the defendant from possessing a firearm. So G2 and G1. So does G3. I mean, then you're left with G4 that doesn't say the phrase condition. But I don't think the phrase condition is in K. But I mean – as I read K. So it strikes me that K says these are the offenses that if you violate, you're in trouble, whereas G seems to suggest, no, these have to be conditions, and then those conditions seem to be – it's almost like G is saying, these are the circumstances that we want to say you would breach trust under. These are things that we need you to have trust under, not necessarily we're concerned about these underlying offenses so much as we're concerned about your breaching these trusts as a condition for your supervised release. Or, I mean – or not. I mean, your colleague on the other side has focused – when I asked the same question, he went to the end game if I understood his outcome correctly. He said, look, it doesn't matter. It doesn't matter. At the end of the day, we look at the offense that's violated, and if that offense is violated, then we're elevating form over substance and we're process over outcome. Yeah, I think that's exactly right. I think that's exactly right. And to Judge Hardiman's question to my opponent, I think it would be very difficult to come up with conduct that would not be discreet conduct in the sense that Justice Breyer seemed to be using that word. I mean, a revocation of supervised release is always for specific conduct that's set out in the violation petition. So it, in some sense, is tied to something in the real world, whether that's a general or specific category. But, Judge Schiff, to your point, I think it is – I think that's exactly right. I think G in referring either explicitly or implicitly to the quote-unquote conditions is very much plugged into the rest of 3583, which Mr. Schuman does not challenge at all. He's conceded that 3583E3, which, don't forget, allows a district judge to, in her discretion, send the defendant back to jail for up to two years in this case, can be longer, without a jury trial and without a finding by a preponderance. That is perfectly fine, he has conceded. And so G, in terms of referring to Congress specifically emphasizing these conditions, drugs and firearms, the things that we want – that we want supervisory DCs to stay away from, you know, we want extra deterrence of those violations and extra protection of the public for them sliding back into that criminal conduct. G is very much part and parcel of the rest of 3583, which Justice Breyer and the four dissenters in Hayman were very clear they would not take issue with, and which the plurality declines to opine on one way or another. So we are dealing here with a specific – with a specific category of offenses, but it's a category that's defined by the condition that is set forth in D. And it is an important point that K is a much later addition to 3583, more than 20 years after the Sensing Reform Act, than G is. All right, let's move on to Parts 2 and 3. Would you agree that the fact that this is mandatory imprisonment hurts you under Hayman, but the fact that it's not a term of years and it's just a day helps you? And if so, feel free to disagree with that formulation. But if you don't disagree with it, then tell us why we should put more weight on the length of the imprisonment rather than the fact that imprisonment is mandated. I don't disagree with that formulation, but I do think that more emphasis should be put on the weight of the – or on the length of the imprisonment here. And it's important to recognize, first of all, the five-year mandatory minimum from K, much longer than anything we have here. Justice Breyer explicitly said that in his third factor as well as his second – the length of the sentence in the second factor. So the five years, anyone I think would agree, much, much longer than one day or one hour of imprisonment or time. So, I mean, to the extent that these are factors and each factor has to be given its due weight, I mean, I guess is it your position that, yeah, you lose the second factor because there's a one-day minimum here, but you don't lose it by much? And so when we're going to weigh all of the factors, you lose number two, but you're going to argue that maybe you win big on one and you win big on three, and so on balance there you go? Or is it your position that you have to win all three or that you don't lose it all on two or that your opponent has to win on all three? I don't think we have to win on all three. I think your question is whether this is more like ordinary revocation than punishment for a new offense. That's the overriding principle from Justice Breyer. But I don't think that we lose on two. I think the government wins on two, or at best it's a wash. And again, just think about the huge differences between the range that Kay provides, five year minimum to life versus the possible terms of imprisonment otherwise laid out under E3, which are, you know, two year maximum. So just to break this down, I mean, you know, two seems to have two parts to it, right? It has to take away the judge's discretion to decide whether a violation of the condition of supervised release should result in imprisonment. So that's the first one. And I think you lose there. But then there's this second part of the second condition, which is and for how long? And so maybe your point is, okay, well, you know, we lose on that first one, but there's still a lot of discretion for how long. And so maybe two is a wash. And to the extent it's not a wash, I mean, we've still got prong two of plain error, and it's hard to say that maybe that's plain. I don't know. What are your thoughts? I think that's right. I think two is more than a wash for us because under G, the range is just so similar to the preexisting range under E3. You still have a maximum, not a mandatory maximum, but you still have a maximum sentence that is linked to the severity of the underlying effects, which again suggests this is a breach of trust provision arising out of the original judgment rather than punishing new conduct. And again, it's worth noting in K, you have a five-year mandatory minimum on the revocation for defendants who may not have faced a mandatory minimum for their original conviction, even if it is one of the listed sex offenses. That's what happened to Mr. Heyman himself. No mandatory minimum to start, five-year mandatory minimum on revocation, and the court was disturbed by that. Contrast that with here where we have a provision that applies only to people who are on supervised release and who have already recently been in prison. This is not a probation provision. And so they have already been in prison, and they face a maximum that's just like everyone else. They face a minimum of one day, one hour, or time served. In many cases, that's not going to have any practical effect. It didn't have a practical effect here because Mr. Signan had been detained pending his revocation hearing. He waived his detention hearing. That's at page 13 of the appendix. But certainly the effect on the judge's thinking and the effect on the ultimate result is going to be much smaller here than it was for Kay. And it's much more consistent with... Well, don't we have to look at the record to decide that? I mean, it could potentially be much smaller. I agree with you. But I mean, it's not a guarantee. And because it's not a guarantee, don't we have to look to the record and see what Judge Signan did? I think in this case, and looking ahead to the plain error point, it's especially clear in this case that that had no effect on Judge Bassoon's calculation here. But I think that kind of reasoning is also significant in figuring out, is this provision more like punishment for a breach of trust, more like ordinary revocation than punishment for a new offense? And I think that the manner in which it plugs into the purposes of the ordinary revocation, letting defendants know that these particular conditions are considered especially serious by Congress, and we especially want to deter that conduct while you're on release, that shows here that G, especially G1, mentioning the condition, is a provision that's geared towards ordinary revocation. And I think the third briar factor also plugs in there as well, because he was concerned that K limits the judge's discretion in a particular manner. Again, adjusting the statutory range five years to life, a possible prison term. Whereas here, this looks very much like ordinary revocation in terms of the range of prison outcomes that the judge can select from. Well, but in ordinary revocation, a judge does not have to impose incarceration, right? That's correct, yes. But I guess your point about the detention is that if Judge Bassoon wanted to be lenient with Mr. Seidman, he would have done no additional time because he had been detained. She would have just given him time served. Absolutely. Absolutely. That was an option in this case. How long was he detained before the revocation hearing was held? I believe it was about a month, somewhere in that range. The violations were in August and the hearing was September. But again, that would fully satisfy the condition of G. That's a point that the FDNY opinion, Hernandez, that we said in our briefs, pointed out. It could be one day. It could be one hour. It could be time served. This is not a very large impingement on the district judge's discretion. And so, factor three, as well as factor two, strongly go in our favor, we would say. And overall, the conclusion is this is more like ordinary revocation, less like punishment for a new offense, and therefore not in violation of the Fifth and Sixth Amendments. Okay. Let's give Judge Nygard a chance, if he has any questions. Ask Mr. Hallowell. No. Thank you, Judge Hardiman. I have no questions. All right. Anything further, Judge Phipps or Mr. Hallowell? I mean, I guess not on anything that's been discussed, but I'm struggling to see your mootness point, how the prior appeal is moot. Is that off the table now, or is that you still believe that prior appeal is moot? No. We definitely still believe that the prior appeal is moot. And the Spencer v. Chemnitz case from the Supreme Court makes clear, unlike an underlying conviction, a parole revocation, or as this Court has said, in Huff and other cases, supervised release, probation revocations, those are not presumed to have continuing collateral consequences. And so... But they do in the revocation context, right? If he wasn't on supervised release, or if he was resentenced for supervised release, and it turns out that on the date of his current offense, he wouldn't have been on supervised release, then he wouldn't have been able to be in prison for violating a condition of his supervised release. So it seems that if he were to go back and get resentenced, and if that resentencing were to be smaller, so small, it might strain the imagination to get it so small, that he wouldn't have been on supervised release on the day of the current offense for which he had his supervised release revoked, then he's got a grievance that was active when he filed his first appeal, and while it may have diminished in value, we look at standing on the date a person invokes jurisdiction, it was active on that date, it might not be nearly as viable today as it was then, but don't you have to prove that it's completely extinguished, and then extinguished not as a result of voluntary cessation, or capable of repetition, yet avoided review? But I don't think you've proven that it's completely extinguished. Well, three responses to that. First of all, it is his burden to prove a continuing injury, standing, mootness, not just based on, they don't just have to exist when the case or controversy arises, they have to exist throughout the entire appellate process. I believe that's the case. But no, that's not his burden, his burden is that he has to show that he had standing on the date that he brought the case. Now you want to show mootness, now it's your burden to show that his injury has been fully extinguished, and so my question is, you've convinced me that it's diminished, the likelihood that him prevailing on that first appeal would have any impact. Yeah, I think that is diminished based on where we are now, but diminished isn't the standard, I think it's extinguished. The standing has to be extinguished in order for something to be moot. The relief that he seeks would have to be completely useless to him. I think that's right, a small interest can defeat mootness, even if it's not the interest that originally existed. But here, it is completely extinguished. There's no actual continuing consequences, which again, it's his burden to prove under from the period of imprisonment that he was on, and his supervised relief has been revoked now. The 2017 judgment is gone and he's subject to a new judgment, and especially because he is not arguing that there was error in the revocation itself. The district court here in 2019 said she would have revoked anyway. He's not arguing, I haven't heard, that there's any risk that he might avoid revocation if this were set back. In any way, that would be speculation, not sufficient to show, to avoid revocation. Well, he gets the benefit of speculation when it's your job to show extinguishment. I guess my thought is, what if as a result of the 2017 violation in his appeal, he were to get that sentence redone? Let's just say that that sentence were to be so small, including the term of supervised relief, that on the date of his current offense, he would not have been on supervised relief. In that case, wouldn't he be able to say, I shouldn't have been on supervised relief this day that I was, you know, received an additional sentence for violating a condition of supervised relief. And so, isn't he allowed to at least say that I want to be resentenced so that maybe it should be that I shouldn't have got a sentence that would even subject me to this condition on the day that I violated that condition. And if that's a possibility, then it's not moot. I don't think that's right. I don't think that's the right way to look at it, because he was obliged to abide by the conditions of his 2017 judgment, including the supervised relief term and condition, unless and until that judgment was stayed or reversed by this court. And he had not achieved that when he committed the violations that he committed in 2019. And even if that – in this case, it's particularly clear. Had he never been revoked in 2017, his three years of supervised relief that began in May 2017 still would have been running in August 2019 when he committed the violations that happened here. So – and there's nothing in the record that suggests that Judge Bassoon in 2017 would have given a shorter aggregate period of imprisonment and release than she did. So – but I would – I would respond – I do argue, Judge Fitts, that it is – it is the appellant, the defendant's burden to defeat mootness. I think that's clear in the Kissinger case from this court and in the Spencer v. Chemna case. And Mr. Schuman has not raised any actual continuing consequences of the 2017 judgment. That might persist. And certainly, at the very worst, if this court were to disagree with us on that, the remedy would be to hold the 2017 appeal in abeyance and, if it reversed in 2019, send that back down to the district court to see if the district court would again revoke on the 20 – on the 2019 conduct. But we believe that the district court did not err much less plainly in its 2019 judgment and certainly, if the court agrees on that and we say, in any event, the 2017 appeal is moot. If there are no further questions. All right. Thank you, Mr. Hallowell. Let's hear Mr. Schuman's rebuttal. Thank you, Your Honor. On Justice Breyer's first prong, I think my friend really just comes down to a purely formal argument, which is that drug possession is not a discrete offense because the subsection G1 doesn't cite to the U.S. code. But I just can't understand why that should make a difference when it comes to the constitutional right to a jury trial. Possession of a drug is discrete conduct. It's prohibited in 21 U.S.C. 844 and it's just as discrete as the sex offenses listed in subsection K. Judge Fitts, you've mentioned that, you know, subsection G1 cross-references violation of the condition in subsection D, but D prohibits unlawful drug possession. So, again, I think that's really just putting form over substance and I, you know, put the hypothetical out there. If subsection K said that there was a five-year mandatory minimum for violating a condition of supervised release by breaking, by violating the sex offense statutes, I don't think the decision would have come out any differently because what Justice Breyer's decision comes down to when he says it, he lays out his principles in the paragraph just before the three factors, is that when you link mandatory punishment to underlying conduct, you're not doing what traditional revocation is supposed to do. I think you're right about that, Mr. Shuman, but I'm not sure it helps you because I think the key words were, what you just said, were five-year mandatory punishment. Right. So, you know, that is a difference between K and G. But I don't think, you know, you can read the concurrence very closely and there's nothing in there that says G is too harsh. There's nothing in there that says G would have been okay if it was a one-year mandatory minimum. You know, he says it limits the judge's discretion in a particular way by requiring a mandatory minimum term of imprisonment of not less than five years. And that's a quote because K, it was a five-year mandatory minimum, but if you look at the principles that are animating the decision, it's about mandatory imprisonment. And my friend hasn't suggested that, you know, K would be okay if it was a one-year prison sentence. What do you do with the detention issue? Shouldn't we take note of that? That, you know, this gentleman was detained before Judge Bassoon ever loaded the boom on him with the 24-month sentence. He was already 30 days in jail. Is that with respect to the merits or to substantial rights? I don't know. I mean, my point is, my point is if we let trial judges detain people before they've been adjudicated guilty, sort of, you know, what's the harm here in the notion that a trial judge is mandated by this law to give someone one day in jail? If trial judges can let them sit in jail for 30, 60 days while they're, you know, scheduling a hearing, and maybe this is more of an Alano, Prog-3 or Prog-4 issue, I don't know. But I'm just, it's a head-scratcher for me because I think people should be locked up only after they're adjudicated, but of course that's not our system, right? Right, and there's plenty of times where people are subject to mandatory revocation and aren't locked up beforehand. I just consulted on a case last year where the person was facing mandatory revocation of supervised release for using medical marijuana in compliance with state law. And, you know, he wasn't detained before the hearing. He walked into the hearing, and if we lost that hearing, the judge would have had to put him in prison for that, and he wouldn't have been able to get time served because he hadn't been detained. So that's not going to be present in every case. At least when it comes down to the merits, I don't think that should be a factor. You know, in terms of the substantial rights point, you know, leniency can take many forms. So, you know, it's not like if the judge really wanted to be lenient with him, she would have only given him one day. She might have given him 18 months, and that would have been a lenient sentence. But instead, she gave him 24 months, and I'd argue that that was informed by the mandatory revocation provision sufficient for us to feel less than confident in the outcome here. What about the mootness? Is it the case that if you don't prevail on the 2019, then 2017 is moot, and the inverse is true? If you do prevail on 2019, then 2017 is not moot? That's right. Yeah, I think if we lose on 19, then 17 is moot because you'll affirm the revocation of supervised release, and there won't be any more continuing controversy. But if we win on subsection – I'm sorry. If we win on 2019, then 2017 isn't moot because 2017, that revocation judgment isn't final until you decide that appeal, and it's been consolidated with the 2019 appeal. So if we win on the 2019 appeal, you'll vacate the 2019 revocation judgment, and Mr. Siegman will have the first term of supervised release, and he'll have standing to challenge that sentence under this court's decision in Jackson. And I just sort of put the hypothetical to the court. If you ruled for us on the 2019 appeal, but then dismissed the 2017 appeal as moot, and then on remand, the district court decided not to revoke Mr. Siegman's release, he'd then be serving a term of supervised release, the initial term, without any way to have challenged that sentence, and that'd be really anomalous. So I agree with you. Okay. All right. Anything further from my colleagues? I have nothing. No. Thank you very much, Judge Hart. All right. Well, I want to thank Mr. Schumann and Mr. Hallowell for the outstanding argument, not merely because of the unusual circumstances, but just because they were outstanding arguments. You've been extremely helpful to the court as we're working through this novel issue, and we'll take the matter under advice.